JAMES A. SMITH *et al.*

*v.*

H. H. McDOWELL, State's Attorney, *ex rel.* M. M. Hall *et al.*

*Filed at Ottawa October 26, 1893.*

1. USE OF STREETS—*for private purposes—and generally, of the use and obstruction of public highways—powers, etc.* The statute giving municipal corporations control of the streets and alleys within the corporate limits, does not invest the corporate authorities with power to vacate a street, or a portion of a street, for the sole benefit and use of a private person, nor does the power to vacate streets confer any such power.

2. By the platting of a village, the streets, in their entire width and length, are dedicated to the use of the public. The village thereby becomes seized in fee of the streets and alleys, for the use of the local and general public, holding them in trust for such use, and none other.

3. SAME—*power to vacate streets.* The general grant of power to cities and villages to vacate streets and alleys is to be construed in view of the purposes for which the municipality is invested with control of its streets. Such corporation has not the unqualified control and disposition of them, and can not alien or otherwise dispose of them for a mere private use. It has no power to grant to individuals rights or easements in a street that may in any way interfere with the duty of preparing them for public use.

4. A municipal corporation holding its streets in trust for the public, without power of converting them to any other use, its right to "vacate the same" is to be exercised only where its authorities, in the exercise of their discretion, determine the street is no longer required for the public use or convenience.

5. The municipal authorities have no power, by ordinance, to vacate a strip of land along and in a public street, for the sole purpose of enabling a private person to occupy such strip of the street with a permanent structure appurtenant to his building abutting upon the street. Nor have they the right to license a permanent obstruction of any part of the street.

6. SAME—*power to authorize a public nuisance.* A building, or other structure of a like nature, erected upon a street without the sanction of the legislature is a nuisance, and local corporate authorities can not give a valid permission thus to occupy the street, without expressed power conferred upon them by charter or statute.

Ind 106
LRA 409
LRA 824n
LRA 582
LRA 663n

148 51
149 296
149 566
150 529
155 41
148 51
52a 434
148 51
66a 292
148 51
175 457
176 24
148 51
181 307
148 51
184 104
148 51
98a¹²187
98a¹²188
148 51
193 ²527
193 ⁶558
193 ³562
99a ¹443
148 51
194 ¹539
194 ¹543
148 51
201 ¹²291
148 51
202 ¹²227
148 51
107a ³125
148 51
114a²⁰383
148 51
215 ¹¹496

7. While a municipal corporation may provide, by ordinance, for the prevention and removal of nuisances, yet it can not license a nuisance, nor can it maintain a nuisance upon city property, but is subject to the same liabilities and remedies therefor, at the suit of persons injured or in behalf of the public, as individuals would be.

8. SAME—*obstructions in streets—when not illegal.* The temporary obstruction of a street incident to the use or repair of the same, or interruption caused by the temporary depositing of earth or material in improving the adjoining lots, or excavations under the street authorized by the municipality, and the like, are not illegal obstructions, if made under proper regulations, and with reasonable safeguards against accident, and such interruptions are not to be regarded as nuisances.

9. And so in respect of iron gratings to admit light; openings for admission of coal; flap or trap-doors; the extension of signs into the streets, and the like, if authorized by the corporate authorities, and properly constructed, so as not to interfere with the public use of the street or sidewalk, are not to be regarded as nuisances.

10. But it is indispensable, to take from the use of the street, for such purposes, the character of a nuisance, that the street or sidewalk be left free for the public use, and in as safe condition as it would have been without such use.

11. SAME—*encroachment upon a public highway or street.* The permanent encroachment upon a public highway or street, unauthorized by the legislature, and the creation of a purpresture thereon which obstructs the free and uninterrupted passage of the public, is, as a matter of law, a public nuisance. The matter of convenience, or that sufficient of the street remains unobstructed to still accommodate the public travel, can not be considered.

12. SAME—*bill to remove—when injury must be shown.* Where the proceedings to abate a public nuisance are instituted by a private individual, the gist of his right of action is the private injury, and he must allege and prove some special damages, different in kind from such as are suffered by the general public. But the public may institute proceedings for the abatement or prevention of the nuisance, irrespective of the question of pecuniary damages.

13. It is not necessary, when the erection is itself an invasion of the public rights,—that is, when it is a nuisance *per se*,—that the fact should first be established at law, preliminary to the jurisdiction by injunction. The public is entitled to the speediest and most effectual way to prevent the threatened invasion of its rights, and if there has been a clear invasion of the common right, the unauthorized taking for private use of that which belongs to the public, as, by the permanent occupation of a public street or a portion of it, injunction will be granted, at the suit of the proper officer, on behalf of the public, to prevent the creation and maintenance of the nuisance.

14. PURPRESTURE —*what obstructions of a street constitute.* An ordinance authorizing an obstruction extending into a street five feet and for the length of eighty-five feet, for the use of an area-way adjoining the basement of a brick building to be erected upon the adjacent lot flush with the lot line, surrounded by a stone wall, on the top of which is to be placed an iron railing, and around which is to be a sidewalk designed for perpetual use, if a license, merely, is one for the creation of a purpresture or a public nuisance, which the municipal authorities have no power to license or maintain.

15. CHANCERY PRACTICE—*exception to unsworn answer.* The sustaining of exceptions to portions of an answer not required to be under oath will afford no ground of reversal, when the facts appearing in the part of the answer to which the exceptions were sustained, if proved, would constitute no defense.

16. NEGLIGENCE—*liability of city, for injury from unsafe condition of streets, etc.* A city can not exempt itself from liability for injuries resulting from an unsafe condition of its streets, or any part of them, and can not delegate to others authority to make them so. Although such occupation may not be a nuisance, yet the owner or person creating the obstruction, or using it, and the city, after notice, will be liable for negligence in its construction or maintenance.

17. Every person passing over a street has the right to presume that it is in proper condition and in every way safe for the purpose of his passage, with due and ordinary care. And as the city or village itself can not be justified in creating a nuisance, no one can justify the creation of a nuisance under a license from it.

18. MUNICIPAL CORPORATIONS—*powers in general.* Cities and villages are instrumentalities of the State, exercising such powers as are conferred upon them in the government of the municipality; and their power is measured by the legislative grant, and they can exercise such powers only as are expressly granted, or are necessarily implied from the powers expressly conferred.

19. The legislature, representing the great body of the people of the State, when no private right is involved or trust violated, may repeal the law creating them, or exercise such control in respect of the streets and alleys within the municipalities of the State, as it shall deem for the interests of the people of the State.

20. SAME—*ordinance—motives prompting its passage not a subject of inquiry.* Whether the motives of village trustees in voting for an ordinance are proper, can not be judicially inquired into; but the purpose accomplished by the ordinance—the object attained—may always be considered in determining its validity. If the purpose effected by it is within the power of the board of trustees, their act will be valid, otherwise not.

APPEAL from the Circuit Court of Livingston county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was a bill in chancery, filed by H. H. McDowell, State's attorney in and for Livingston county, this State, on the relation of M. M. Hall and William Cowling, citizens and electors of the village of Chatsworth, in said county, on their own behalf as well as the general public, to restrain the construction of a purpresture, consisting of an area-way, and stairs therein, in one of the principal streets of said village.

The bill alleges, in substance, that on June 8, 1859, the then proprietors of certain described lands surveyed and platted the same into lots, blocks, streets, alleys and public grounds, as the town of Chatsworth; that said town afterward became incorporated under the general law, as a village; that by virtue of said plat, and the terms of dedication in the acknowledgment thereto, and the recording thereof, all the said streets, etc., became dedicated for the use of the public, and have ever since been so used; "that in said village is a public street named Fourth street," on said plat; that the president and board of trustees of said village "have undertaken, by ordinance, to dispose of" a portion of said street "for private purposes and uses," and an ordinance of the village is set out as follows:

"AN ORDINANCE TO VACATE PART OF FOURTH STREET IN THE VILLAGE OF CHATSWORTH.

"*Be it ordained by the president and board of trustees of the village of Chatsworth,* That to enable the owner of lot (9), in block twenty-two (22), in the original town (now village) of Chatsworth, to erect and maintain a brick building on said lot nine (9), with an area and entrance-way to the basement of such building in said Fourth street, on the west side of such building, the part of said Fourth street, in said village of Chatsworth, beginning at the south-west corner of said lot nine (9), and running thence west five (5) feet in said Fourth

street, thence north in said Fourth street eighty-five (85) feet, thence east five (5) feet to the east line of said Fourth street, and thence south eighty-five (85) feet to the place of beginning, be and the same is hereby vacated.

"Approved September 8, 1891.

JAMES A. SMITH, *Pres.*

Attest: JOHN TAGGERT, *Village Clerk.*"

It is further alleged, in substance, that said lot 9, of which said Smith is the owner, is located on the corner of Fourth and Locust streets, principal thoroughfares in said village, and that the sole purpose and object of said ordinance were to give to said Smith the five by eighty-five feet vacated, for an area and stairways in connection with the basement of his building being erected on said lot, and that to permit the construction of such area and stairways in said street will create a purpresture therein and a permanent obstruction thereof; that it will be a public nuisance, and permanently deprive the public of that portion of the street so given to Smith, over which the public has hitherto traveled upon a sidewalk along said lot. The bill makes said James A. Smith and the village parties defendant, prays that the ordinance be declared void, and that said Smith has acquired no rights thereunder, and if any excavation or area has already been made, that the same be declared a nuisance, and abated accordingly; prays injunction restraining said Smith from excavating in said street, and from constructing and maintaining said area and stairways, and from using said street for such private purpose, and that the injunction be made perpetual.

A temporary injunction issued. Answer was filed admitting all the material allegations of the bill, but averring new matters, to which exceptions were filed and sustained, and, by consent, the parties proceeded to a hearing upon the bill, and the remaining portions of the answer to which exceptions had not been filed and sustained. This practically treated the allegations of the bill as true. The court below entered a

decree in favor of complainant, finding the ordinance void and awarding a perpetual injunction. The defendants prosecute this appeal.

Messrs. STRAWN & NORTON, for the appellants:

Control over streets is inherent in the legislature, and resides nowhere else except by direct legislative delegation. *O'Conner* v. *Pittsburg,* 18 Pa. St. 187; *Perry* v. *New Orleans, etc., Co.* 55 Ala. 413; *Stack* v. *East St. Louis,* 85 Ill. 377; *Stone* v. *Railroad Co.* 68 id. 394; *Railroad Co.* v. *Hartley,* 67 id. 439; *Railroad Co.* v. *People,* 92 id. 170; *Trenton Railroad case,* 6 Whart. 25; *Commissioners* v. *Gas Co.* 12 Pa. St. 318; *Stuber Road* v. *State Road,* 28 id. 199; *Stormfeltz* v. *Turnpike Co.* 13 id. 555; *Baird* v. *Rice,* 63 id. 589; *Gray* v. *Iowa Land Co.* 26 Iowa, 387.

Acts which would be nuisances but for the sanction of the legislature, are rendered lawful by such sanction. Angell on Highways, sec. 237; *Baptist Church* v. *Railroad Co.* 6 Barb. 213; *Clinton* v. *Railroad Co.* 24 Iowa, 455; *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Perry* v. *New Orleans, etc., Co.* 55 Ala. 413; *Hughes* v. *Railroad Co.* 1 U. S. 493; *Turnpike Co.* v. *Railroad Co.* 2 Hun, 314; *Stormfeltz* v. *Turnpike Co.* 13 Pa. St. 555.

The general rule, as formulated by the courts, is, that instead of retaining and exercising this power directly, the legislature may delegate it, in its entirety, to local municipalities, to be exercised by them in their discretion. *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Linton* v. *Asbury,* 41 Cal. 525; *Chicago* v. *Rumsey,* 87 Ill. 348; *Barber* v. *Roraback,* 36 Mich. 399; *Detroit* v. *Plank Road Co.* 37 id. 558; *Hall* v. *State,* 20 Ohio, 8; *Summerville* v. *O'Neal,* 114 Mass. 355.

In the absence of constitutional limitations the legislature may delegate its plenary power over streets, to cities and villages. *Gray* v. *Iowa Land Co.* 26 Iowa, 387; *Stuber Road* v. *State Road,* 28 Pa. St. 199; *Kimball* v. *Kenosha,* 4 Wis. 321;

*Commissioners* v. *Gas Co.* 12 Pa. St. 318; *Trenton Railroad case,* 6 Whart. 25; *Pollock* v. *Orphan Asylum,* 48 Cal. 490; *State* v. *Huggins,* 47 Ind. 586; *Speigel* v. *Gansberg,* 44 id. 418; *Coster* v. *New York,* 43 N. Y. 399; *Kellinger* v. *Railroad Co.* 50 id. 206; *Fearing* v. *Irwin,* 55 id. 486.

In further support of the proposition that the legislature has power to vacate a street in a city, and may delegate this power to municipal authorities, we cite the following cases: *Brook* v. *Horton,* 68 Cal. 554; *Pillsbury* v. *Augusta,* 79 Me. 71; *McGeg* v. *Railroad Co.* 114 Pa. St. 470; *State* v. *Huggins,* 47 Ind. 286; *Kimball* v. *Kenosha,* 4 Wis. 321; *Kellinger* v. *Railroad Co.* 50 N. Y. 206; *Coster* v. *New York,* 43 id. 399.

The cases to the effect that highways can not, in any event, be discontinued for the purpose of devoting them to private and inconsistent uses, are as follows: *Grasgow* v. *St. Louis,* 87 Mo. 688; *Duback* v. *Hannibal,* 89 Mo. 483; *Indianapolis* v. *State,* 37 Ind. 489; *Warren* v. *Lyons,* 22 Iowa, 351; *Portland* v. *Portland,* 14 Ore. 188; *Le Clerc* v. *Gallipolis,* 7 Ohio St. 217; *Winchester* v. *Captain,* 63 N. H. 605; *Stevenson* v. *Mayor,* 20 Fed. Rep. 586.

The courts will not interfere with the exercise of the discretion of the authorities of cities and villages. *Leeds* v. *Richmond,* 102 Ind. 372; *Kokoma* v. *Lahan,* 100 Iowa, 22; *Plat* v. *Railroad Co.* 31 N. Y. 883; *Weaver* v. *Templin,* 113 Ind. 298.

This legislative discretion will not be controlled by injunction. A court of equity will not interfere with the discretionary authority of municipal officers in such cases. *Gas Co.* v. *DesMoines,* 44 Iowa, 505; *Chicago* v. *Evans,* 24 Ill. 52; *Smith* v. *McCarthy,* 50 Pa. St. 359; *Sheridan* v. *Colvin,* 78 Ill. 237; *Richmond* v. *Davis,* 103 Ind. 449.

In this connection the point may be made that the doctrine of equitable estoppel is applicable to this prosecution, in the name of the public, upon the authority of *Railroad Co.* v. *Joliet,* 79 Ill. 26.

Any unauthorized excavation in or near a highway is a nuisance, and so the maintaining of an open area adjoining a public street, or cellar openings not properly guarded, or to erect or maintain steps or stairs, or a stoop, bow-window, or any projection over a public street. Under this head are included all coal-holes, cellar-flaps, or openings of any kind. *Jarvis* v. *Dean,* 11 Moore, 354; *Copeland* v. *Hardingham,* 3 Campb. 368; *Bishop* v. *Trustees,* 1 El. & El. 697; *Pickard* v. *Smith,* 10 C. B. (N. S.) 470; *Fisher* v. *Prouse,* 31 L. J. 2 B. 219; *Chicago* v. *Ribbons,* 2 Black, 418; *Clark* v. *Fry,* 8 Ohio St. 359; *Nelson* v. *Godfrey,* 12 Ill. 20; *Bowers* v. *Ward,* 19 A. J. C. P. 200.

The foregoing cases all proceed upon the assumption of an unauthorized interference with the highway, and one that is dangerous, or liable to cause damage to persons passing on the highway. To be a nuisance the interference must be without authority, and possess the element of danger or inconvenience. The following cases as to areas proceed upon the double assumption of their being both dangerous and unauthorized: *Irvine* v. *Wood,* 51 N. Y. 224; *Congreve* v. *Smith,* 18 id. 79; *Congreve* v. *Morgan,* id. 84.

The following case arose upon a cellar opening not properly guarded, and unauthorized by the municipality: *Copeland* v. *Hardingham,* 3 Campb. 398.

As to steps, stairs or stoops, bow-windows, or other projections over a public street which interfere with or endanger public travel and are not sanctioned by the municipal authorities, the following cases are in point: *Comers* v. *Blaisdell,* 107 Mass. 234; *Regina* v. *Burt,* 11 Cox's C. C. 339.

As to coal-holes, cellar-flaps and openings of all kinds, covered or otherwise, but not authorized by the municipality, the following cases may be examined: *Holins* v. *Railroad Co.* L. R. Exch. 254; *Hadley* v. *Taylor,* L. R. 1 C. P. 53.

Mr. N. J. PILLSBURY, for the appellee:

The village held the streets in trust for the use of the public, and for no other use. *Carter* v. *Chicago,* 57 Ill. 285 ; *Sherlock* v. *Winnetka,* 59 id. 389 ; *Jacksonville* v. *Railway Co.* 67 id. 540 ; *Quincy* v. *Jones,* 76 id. 231 ; *Chicago* v. *Wright,* 69 id. 327 ; *Kreigh* v. *Chicago,* 86 id. 410 ; *Stack* v. *East St. Louis,* 85 id. 377 ; *Morrison* v. *Hinkson,* 87 id. 587 ; *Lee* v. *Mound Station,* 118 id. 312.

A city or village can not create or license a public nuisance. Dillon on Mun. Corp. secs. 316, 321, and notes ; Wood on Nuisances, 831, secs. 74, 254, 250 ; *Pfau* v. *Reynolds,* 53 Ill. 212.

A deed from a city will not justify a purpresture. *Stetson* v. *Faxon,* 19 Pick. 147.

Neither can a city, for its own use, obstruct public streets, as, by building a water tank therein. *Morrison* v. *Hinkson,* 87 Ill. 587 ; *Princeville* v. *Auten,* 77 id. 325.

Nor can the legislature authorize the taking of lands dedicated to public use, for private purposes. *Price* v. *Thompson,* 48 Mo. 361 ; *Jacksonville* v. *Railway Co.* 67 Ill. 541 ; *Warren* v. *Lyons,* 22 Iowa, 357.

At all events, those who claim such power to exist must show it by the clear letter of the statute. *Kreigh* v. *Chicago,* 86 Ill. 410 ; *State* v. *Gas Co.* 18 Ohio St. 262.

The general powers conferred upon cities over streets do not authorize them to vacate the streets for private use, or to allow encroachments to be placed permanently thereon. Dillon on Mun. Corp. sec. 521 ; *Princeville* v. *Auten,* 77 Ill. 325 ; *Stack* v. *East St. Louis,* 85 id. 377 ; *Carter* v. *Chicago,* 57 id. 377.

As to the jurisdiction of a court of equity in suits to abate or prevent a public nuisance, see Story's Eq. Jur. sec. 924 ; Wood on Nuisances, secs. 777, 786 ; Kerr on Injunctions, sec. 230 ; Bispham's Eq. sec. 400 ; Joyce on Injunctions, sec. 1309 ; *Pennsylvania* v. *Bridge Co.* 13 How. 518 ; *Craig* v.

*People*, 47 Ill. 487; *People* v. *St. Louis*, 5 Gilm. 373; *Green* v. *Oaks*, 17 Ill. 249; *Minke* v. *Hopeman*, 87 id. 450.

As to mandatory injunctions, see *Earl* v. *DeHart*, 1 Beas. 280; *East India Co.* v. *Vincent*, 1 Atk. 83; *Reimer's Appeal*, 100 Pa. St. 182; *Van Bergen* v. *Van Bergen*, 2 Johns. Ch. 272; *Hammond* v. *Fuller*, 1 Paige, 197; *Schwærer* v. *Market Ass.* 99 Mass. 285; *State* v. *Mobile*, 5 Port. 279; *Murdock's case*, 2 Bland's Ch. 461.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The important question presented by this record is, whether, under the statute giving municipal corporations control of the streets and alleys within the municipality, power exists in the corporate authorities to vacate a street, or a portion of a street, for the benefit and use of a private person.

It is charged, and the answer practically admits, and, indeed, the ordinance on its face purports, that the attempted vacation of a strip five feet wide and eighty-five feet long, off of the side of the street, was for the single purpose of permitting its use by appellant Smith, president of the board of trustees of the village, as an area-way, connected with the basement of his proposed building. The doctrine is sought to be invoked, that the motives of the trustees of the village in the passage of the ordinance can not be judicially inquired into. That position is at once conceded. Whether their motives were honest or otherwise, in voting for the ordinance, is not a subject of inquiry. But the purpose accomplished by the ordinance,—the object attained,—may always be considered, indeed, must be, in determining the validity of the ordinance. If the purpose effected by the ordinance is within the power of the city council, their act will be valid. The question to be determined is one of power in the municipality, in the determination of which, the legal effect of the action of the municipality becomes the controlling matter for consideration.

In *Ligare* v. *Chicago*, 139 Ill. 46, it was held that the effect—the result—of the action of the city council was the exclusion of the general public from a portion of the public street opened and sought to be opened, and the power of the city to so exclude the public was denied. No such purpose was expressed in the ordinance, but that being the effect of what was done, the court looked to the result, and that result requiring the exercise of power not conferred upon or existing in the municipality, the ordinance was declared void.

The answer avers, that under and by virtue of the ordinance, in this case, Smith had taken possession of the *locus in quo*, excavated for and erected a stone area-wall, enclosing the strip of the street proposed to be vacated. The purpose sought to be attained, and actually accomplished, if the ordinance is valid, is not left in doubt. This strip of ground was to be delivered over to Smith for his private use, and the control of the municipality over the same, as a part of a public street of the village, extinguished.

Before proceeding farther it will be proper to notice the contention that the court erred in sustaining exceptions to portions of the answer. The practice in chancery, in this State, in respect of exceptions to answers, which are mere pleadings, the verification having been waived in the bill, has been so repeatedly determined that no discussion will be necessary. (*Board of Supervisors* v. *M. and W. Railway Co. et al.* 21 Ill. 338; *Brown* v. *Scottish-American Mortgage Co.* 110 id. 235; *Mix* v. *The People*, 116 id. 265.) Conceding, in view of these authorities, that the court erred in this respect, it is manifest that defendants were not prejudiced thereby. A careful examination of the answer will fail to disclose a single averment of fact, to which exception was sustained, which, if retained and proved in the most ample manner, would have changed the result. Thus, proof of the fact that it was agreed between the village and Smith that he should enclose the area-way with a substantial iron railing, and extend the sidewalk around

it, and the like facts, would in nowise affect the question of whether a purpresture was created in the street, or the power of the village authorities to vacate that portion of the street for the private use contemplated.

It is contended, first, that the power of the village authorities to vacate streets is plenary, and that they having, in the exercise of their legislative discretion, vacated the strip of ground mentioned, their action is not the subject of judicial review; and secondly, if the vacating ordinance be invalid, it is nevertheless a license to Smith to occupy that portion of the street, and such occupancy by him is not therefore a nuisance.

It is insisted, that as the statute (Rev. Stat. chap. 24, par. 63, clause 7,) grants power to municipalities organized under the general Incorporation act "to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds, and vacate the same," the power to vacate is absolute, to be exercised in the discretion of the municipal authorities. We can not concur in this view. By the platting of the village the streets, in their entire width and length, were dedicated to the use of the public, as streets. The village thereby became seized in fee of the streets and alleys, for the use of the local and general public, holding them in trust for such uses and purposes, and none other. (*Alton* v. *Transportation Co.* 12 Ill. 38; *Carter* v. *Chicago,* 57 id. 285; *Chicago* v. *McGinn,* 51 id. 266; *Jacksonville* v. *Jacksonville Railway Co.* 67 id. 540; *Quincy* v. *Jones,* 76 id. 231; *Kreigh* v. *Chicago,* 86 id. 410; *Stack* v. *East St. Louis,* 85 id. 377; *Lee* v. *Mound Station,* 118 id. 312.) These municipal corporations are instrumentalities of the State, exercising such powers as are conferred upon them in the government of the municipality. Their power is measured by the legislative grant, and they can exercise such powers only as are expressly granted, or are necessarily implied from the powers expressly

conferred. The legislature representing the great body of the people of the State, when no private right is invaded or trust violated, *(Jacksonville* v. *Jacksonville Railway Co. supra,)* may repeal the law creating them, or exercise such control in respect of the streets, alleys and public grounds, within the municipalities of the State, as it shall deem for the interest of the people of the State. Dillon on Mun Corp. sec. 541; *Chicago* v. *Rumsey,* 87 Ill. 355; *The People* v. *Walsh,* 96 id. 253; *Chicago* v. *Union Building Ass.* 102 id. 397; *West Chicago Park Board* v. *McMullen,* 134 id. 170.

It does not follow, however, as seems to be supposed, that by the use of the general words, "and vacate the same," the absolute power of the legislature was intended to be conferred upon the municipal authorities. The grant of power in this particular is to be construed in view of the purposes for which the municipality is invested with the control of its streets, alleys and public grounds. The municipality, in respect of its streets, is a trustee for the general public, and holds them for the use to which they are dedicated. The fundamental idea of a street is, not only that it is public, but that it is public in all its parts, for free and unobstructed passage thereon by all persons desiring to use it.

In *Alton* v. *Transportation Co. supra,* we said, in treating the subject there under consideration: "Whatever title to these public grounds may be vested in the city, she has not the unqualified control and disposition of them. They were dedicated to the public for particular purposes, and only for such purposes can they be rightfully used. For these purposes the city may improve and control them, and adopt all needful rules and regulations for their management and use, but she can not alien or otherwise dispose of them. At most, she but holds them in trust for the benefit of the general public." In *Quincy* v. *Jones, supra,* after quoting with approval the foregoing language, it is said: "It is the unquestioned duty of the city, in controlling and improving the streets, to prepare

them for public use as streets, * * * as the public necessity may require. Holding them in trust for the public, and having no authority to convey or divert them to other uses, it would seem inevitably to follow that they can have no power to grant to individuals rights or easements in the street which might in any way interfere with the duty of preparing them for public use." And in *Chicago Dock Co.* v. *Garrity et al.* 115 Ill. 155, in considering the power of the municipality to grant rights in the public streets of the city, it was said: "It is not claimed that the use of the streets can be permanently granted for private purposes, and we recognize as unquestionable law that the use of the streets * * * must be for the public, and that no corporation or individual can acquire an exclusive right to their use, or to the use of any part of them, for private purposes." In *Glasgow* v. *St. Louis*, 87 Mo. 678, under power "to establish, open, vacate, alter, widen, extend, pave or otherwise improve all streets," etc., it was held, that an ordinance to vacate a portion of one of the streets of the city for the use of private parties was *ultra vires.* See, also, *Reimer's Appeal*, 100 Pa. St. 182; *St. Vincent's Orphan Asylum* v. *Troy*, 76 N. Y. 108; *State* v. *Berdetta*, 73 Ind. 185; *Belcher Sugar Refinery Co.* v. *St. Louis, etc. Co.* 82 Mo. 127; *Dubash* v. *Hannibal and St. Joe Railroad Co.* 89 id. 86.) And we held that the city can not acquire land by condemning the same for a street, when the real purpose is to devote it to a private use. (*Ligare* v. *Chicago, supra.*) In the *Belcher Sugar Refinery Co. case, supra,* the court held that the corporation could not condemn the property for a public use, to be appropriated to a private use. It in nowise affects the principle involved, whether the street is acquired by dedication or condemnation. *Glasgow* v. *St. Louis, supra.*

The municipal corporation holding and controlling its streets in trust for the use of the general public, without power of converting them to any other use, it follows, necessarily, that the right to "vacate the same" is to be exercised

only when the municipal authorities, in the exercise of their discretion, determine the street is no longer required for the public use or convenience, and the case of *Meyer* v. *Village of Teutopolis*, 131 Ill. 552, is, when properly understood, not in conflict with the views here expressed. See *Ligare* v. *Chicago, supra*.

It is not necessary to here discuss or determine whether the courts will, in any case, interfere to prevent the abuse of municipal discretion in the respect mentioned, for the reason that it is not sought to restrain the exercise of such discretion, but to prevent the perversion of their power to the promotion of private interests, in violation of the trust upon which the streets are held. (*Carter* v. *Chicago, supra*.) In this case there is no pretence that the public interest required the vacation of any part of the street, or that any public interest, local or general, would be subserved by the proposed vacation. The ordinance, professedly and in terms, proposes to destroy the public right and use, for the sole purpose of enabling a private person to occupy a portion of the street with a permanent structure, appurtenant to his building abutting upon the street. This the municipal authorities are not empowered to do, and their action was *ultra vires* and void.

The other contention, even if the ordinance could be regarded as a license to Smith to permanently occupy a portion of the street, is equally untenable. As we have seen, the primary purpose of a street is for public use, and that it is not within the power of the municipality to divert the street to permanent private uses. It by no means follows that every obstruction of a street is a purpresture, or illegal. Thus, the necessary and temporary obstruction incident to the use or repair of the street; the interruption that may be caused by the temporary depositing of earth or material in improving the adjoining lots; excavations under the street authorized by the municipality, and the like, (*Gridley* v. *Bloomington*, 68 Ill. 47,) if temporary and reasonably necessary, must be borne,

5—148 Ill.

as a reasonable and necessary limitation of the free and un-
interrupted right of use by the public, and when made under
proper regulations, and with reasonable safeguards against
accident, such interruptions are not to be regarded as nui-
sances, the test in all such cases being, that the interruption
shall be reasonably necessary, and not continued for an unrea-
sonable time.    (2 Dillon on Mun. Corp. 581, *et seq.* and au-
thorities cited; Angell on Highways, ch. 6; Wood on Law of
Nuisances, 262, *et seq.*)   And so in respect of iron gratings to
admit light, openings for admission of coal, flap or trap-doors,
the extension of signs into the street, and the like, if author-
ized by the municipality, and properly constructed, so as not
to interfere with the public use of the street or sidewalk, are
not to be regarded as nuisances.    But it is indispensable, to
take from the use of the street, for such purposes, the char-
acter of a nuisance, that the street or sidewalk be left free
for the public use, and in as safe condition as it would have
been without such use, for the city government can not ex-
empt itself from liability for injuries resulting from an unsafe
condition of the streets or any part of them, and can not del-
egate to others authority to make them so, for although such
occupation of the street may not be a nuisance, yet the owner
or person creating the obstruction, or using it, and the city,
after notice, will be liable for negligence in its construction
or maintenance.    (Wood on Law of Nuisances, 275, *et seq.*,
and cases cited; Dillon on Mun. Corp. *supra;* Elliott on Roads
and Streets, 480-540.)   Every person passing over the street
has a right to presume that it is in proper condition, and in
every way safe for the purpose of his passage, with due and
ordinary care, and as the municipality itself can not be justi-
fied in creating a nuisance, no one can justify the creation of
a nuisance under a license from it.

The distinction between these uses of the street, when au-
thorized, and that proposed in this case, is well defined.   That
the obstruction extending into the street five feet, and for the

length of eighty-five feet, was intended to be, and was, perma-
nent, is not questioned. It was for use as an area-way, ad-
joining the basement of the brick building to be erected upon
the adjacent lot, flush with the lot line. It was surrounded
by a stone wall, on the top of which was to be placed an iron
railing, and the sidewalk was to be extended around it. Its
perpetual use was necessary for the purpose for which it was
designed, and if the ordinance be treated as a license, merely,
the right to so maintain it in the public street, to the exclusion
of the public, and for the exclusive benefit of the abutting lot
owner, was intended to be conferred. This being so, it falls
within the definition of a purpresture, (4 Blackstone's Com.
167,) and is, *per se,* a public nuisance, which the village au-
thorities had no power to license or maintain. Wood on Law
of Nuisances, 238, *et seq.*

The 221st section of the Criminal Code (1 Starr & Curtis,
815,) provides: "It is a public nuisance:  *  *  *  5. To
obstruct or encroach upon public highways,  *  *  *  streets,
alleys, commons," etc. "The king," says Judge DILLON, (Mun.
Corp. sec. 521,) "can not license the erection or commission
of a nuisance, nor, in this country, can a municipal corpora-
tion do so by virtue of any implied or general power. A build-
ing, or other structure of like nature, erected upon a street
without the sanction of the legislature is a nuisance, and the
local corporate authorities of a place can not give a valid per-
mission thus to occupy the streets, without express power to
this end conferred upon them by charter or statute." (See
note.) Wood, in his Law of Nuisances, (sec. 742,) lays down
the rule, that "while a municipal corporation may provide, by
ordinance, for the prevention and removal of, yet it can not
license, a nuisance, nor can it maintain a nuisance upon city
property, but is subject to the same liabilities and remedies
therefor, at the suit of persons injured or in behalf of the
public, as an individual would be." These texts are amply
sustained by the decided cases cited.

In *Pettis* v. *Johnson*, 56 Ind. 139, the city of Indianapolis contracted with the owners of a building situated upon one of the public alleys of the city, that they should construct a stairway in the alley, to afford access to rooms in the building, occupied by officers of the city. The structure being permanent in its character, it was held to be a nuisance, and abated accordingly. The court says: "The city had no power to contract for such a structure in such a place. True, the city has exclusive jurisdiction over the streets and alleys, not to enable it to appropriate them or any part of them, in perpetuity, to the use of private individuals, but to keep them, so far as may be, open and free to all, and so regulate and control necessary temporary obstructions that they shall not become permanent." *Pfau* v. *Reynolds*, 53 Ill. 212; *Commonwealth* v. *King*, 13 Metc. 115; *State* v. *Berdetta, supra; Hart* v. *Mayor*, 3 Paige, 213; *The People* v. *Cunningham*, 1 Denio, 524, and cases *supra*.

The permanent encroachment upon a public highway or street unauthorized by the legislature, and the creation of a purpresture therein, which obstructs the free and uninterrupted passage of the public, is, as a matter of law, a public nuisance. The matter of inconvenience to the public, or that sufficient of the street may remain unobstructed to still accommodate the public travel, can not be considered. The trustee of the public,—the municipality,—is charged with the duty of keeping and maintaining the streets, in all their parts, open and unobstructed, and in reasonably safe condition for the public use. No question of the amount of damage done or that may ensue from the creation of the purpresture is raised, nor can it be considered in proceedings by the public, the question being, simply, whether there has been an invasion of the public right. Where the proceedings are instituted by a private individual for a public nuisance, the *gist* of his right of action is the private injury, and he must allege and prove some special damage, different in kind from that

suffered by the general public. (*McDonald* v. *English,* 85 Ill. 232; *Chicago* v. *Union Building Ass.* 102 id. 379; *East St. Louis* v. *O'Flynn,* 119 id. 200.) The public may institute proceedings for the abatement or prevention of the nuisance, by its authorized public officers, irrespective of the question of pecuniary damage. (*Jackson et al.* v. *Norris,* 72 Ill. 364; *Hunt* v. *Chicago Horse and Dummy Railway Co.* 121 id. 638.) Nor does it seem to be necessary, when the erection is, itself, an invasion of the public right,—that is, where it is a nuisance *per se,*—that the fact should be established at law, preliminary to the jurisdiction by injunction. The public is entitled to the speediest and most effectual way to prevent the threatened invasion of its right. (Wood on Law of Nuisances, secs. 777, 786; Dillon on Mun. Corp. 520; *State* v. *Mayor of Mobile,* 5 Port. 279; *Reimer's Appeal, supra; Attorney General* v. *Vanderbilt,* 26 N. Y. 287; *Manhattan* v. *Barker,* 7 Robt. 723; Eden on Injunctions, 11-159.) And if there has been a clear invasion of the common right, — the unauthorized taking for private use of that which belongs to the public, as, by the permanent occupation of a public street, or a portion of it,—injunction will be granted, at the suit of the proper officer, on behalf of the public, to prevent the creation and maintenance of the nuisance. 3 Pomeroy's Eq. 1359, and note; *Earle* v. *DeHart,* 1 Beasley, (N. J. Eq.) 280; *Sparhawk* v. *Union, etc. Railroad Co.* 54 Pa. St. 401; *East India Co.* v. *Vincent,* 2 Atk. 83; *Murdock's case,* 2 Bland. Ch. 461; 29 Am. Dec. 389, notes.

We are of opinion that the chancellor decided correctly, and the decree of the circuit court will be affirmed.

*Decree affirmed.*