37:39 LRA 670n

## THE CITY OF MT. CARMEL

*v.*

## MARIA L. SHAW *et al.*

*Filed at Mt. Vernon January 14, 1895.*

1. CITIES AND VILLAGES—*power of municipal authorities over streets and sidewalks.*  A city organized under the general act may do anything with its streets not incompatible with the end for which streets are established, and the exercise of its discretion in locating a sidewalk upon a street will not be interfered with by the courts.

2. SAME—*equity will not interfere with the exercise of municipal powers.*  A court of equity has no jurisdiction to interfere, by injunction, with the action of municipal authorities within their well-recognized powers or in the exercise of a discretionary power, unless the power or discretion is manifestly being abused to the oppression of the citizen.

3. SAME—*city may vacate part of a street.*  Under the power given by statute to a city to vacate streets, it may vacate a strip upon each side of the street so as to narrow it, where the purpose of narrowing is not to benefit private owners, but because it is deemed that so great a width of street is not required for public use.

4. SAME—*consequence of vacating strips on sides of street.*  An ordinance vacating a strip upon each side of a street, for the purpose of narrowing it, is not invalidated by a provision that such strips are donated to the abutting lot owners, where the street was originally acquired by dedication from the land owners, as upon the vacation the title of the abutting owners becomes absolute by operation of law, and such provision is surplusage.

5. SAME—*ordinance locating sidewalks construed with reference to previous vacation.*  A street line fixed by a valid ordinance vacating a strip along both sides of the street as originally laid out, applies to and is coincident with the outside line of such street as mentioned in a subsequent ordinance providing for and locating a sidewalk with reference to such line.

6. SAME—*shade trees in a public street are the property of the municipality.*  Shade trees in the public streets of a city are the property of the municipality.  It has complete control over them, and will not be enjoined from cutting them down where they would constitute permanent obstructions to the sidewalk if left standing.

*City of Mt. Carmel* v. *Shaw*, 52 Ill. App. 429, reversed.

| 155 | 37 |
| 155 | 44 |

| 155 | 37 |
| 179 | 234 |

| 155 | 37 |
| 199 | 365 |

| 155 | 37 |
| d214 | 641 |

| 155 | 37 |
| 215 | 609 |

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Wabash county; the Hon. SILAS Z. LANDES, Judge, presiding.

The appellees are the owners and in possession of lot 329, situated on the north side of Sixth street, in the city of Mt. Carmel, Illinois, near the center, in width, of which lot is located their dwelling house, in which they have resided for about thirty years. On each side of the front of their house, in the street, are two large maple trees, about forty feet high and two feet in diameter. They were planted about the year 1857, and the nearest is situated six feet from the south line of the lot and north line of the street as the city was originally platted. The sidewalks heretofore constructed were always placed between said lot and trees. The uniform width of the streets of the city was ninety-nine feet. In July, 1891, the city council passed an ordinance in relation to lawns and sidewalks, and narrowing or cutting down the width of streets, and donating certain portions of ground to the property holders. The first six sections of said ordinance were as follows:

"Sec. 1. That there shall be set aside, for sidewalk and other purposes hereinafter mentioned, eighteen feet on both sides of all the streets in said city that were originally laid out and are now ninety-nine feet wide, except Market street.

"Sec. 2. That the city surveyor, under the supervision of the street committee, shall survey and lay off said eighteen feet along both sides of said streets, and shall designate the outside line of said eighteen feet.

"Sec. 3. That in making such survey no street, or any part thereof, shall be less than sixty-three (63) feet in width, measuring from outside to outside line of said eighteen feet.

"Sec. 4. That a strip two feet wide next to the property, lands, lot or lots abutting on said streets shall be and is hereby vacated, donated and given to and shall be a part of said lands, lot or lots.

"Sec. 5. That six feet of the remaining sixteen feet, next to the property, lands, lot or lots on both sides of said streets, shall be set apart upon which to build sidewalks, and the remainder of said sixteen feet, namely, ten feet, more or less, on both sides of said streets, shall be set apart for lawn purposes.

"Sec. 6. That the city shall retain and have full control of said sixteen feet, along both sides of said streets, set apart for sidewalk and lawn purposes, and shall have the right to grade said sixteen feet, on both sides of said streets, set apart for sidewalk and lawn purposes, so as to make said ten feet correspond with the established grade of said city."

On July 25, 1892, the city council passed an ordinance for the construction of a brick sidewalk six feet in width, on the north side of Sixth street. Said ordinance provided that "said sidewalk shall be made and constructed along the outside line of said street, and adjoining the property, lands, lot or lots abutting on said street." The city, in constructing the sidewalk under said last mentioned ordinance, recognized the outside line of Sixth street as the one established by the ordinance of July, 1891, whereby two feet on each side of the street was vacated and donated to the adjoining lot owners, thereby extending the sidewalk into the street so far as to include the larger part of the bodies of the above mentioned trees, and these trees the city officials proposed to cut down and remove out of the way of said improvement. Thereupon appellees filed this bill in chancery, and prayed for and obtained a writ of injunction. Upon a hearing in the circuit court the injunction was made perpetual. Upon appeal to the Appellate Court the

injunction was so modified as that it should remain in force only so long as there is no public necessity for a sidewalk along lot 329 in excess of the width of six feet. The decree, as thus modified, was affirmed.

GEORGE P. RAMSEY, and M. F. HOSKINSON, for appellant.

MUNDY & ORGAN, for appellees.

Mr. JUSTICE BAKER delivered the opinion of the court:

By the general Incorporation act, under which the city of Mt. Carmel is organized, it has power to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve its streets and sidewalks, and vacate the same. It may do anything with its streets which is not incompatible with the end for which streets are established. (*Roberts* v. *City of Chicago*, 26 Ill. 249; *Murphy* v. *City of Chicago*, 29 id. 279.) And where the municipal authorities are acting within their well-recognized powers, or are exercising a discretionary power, a court of equity has no jurisdiction to interfere, unless the power or discretion is being manifestly abused to the oppression of the citizen. *Brush* v. *City of Carbondale*, 78 Ill. 74.

The rights of the parties to this controversy seem to depend largely upon the question whether the city, under its power to vacate streets, has power to vacate only a portion of a street. Under the familiar rule that the whole of a thing includes all of its parts, it would seem that it has. In *Village of Hyde Park* v. *Dunham*, 85 Ill. 569, this court, speaking of the village there a party, said: "The corporate authorities are vested with complete control, as is every other municipal corporation, over its streets. They may contract or widen them, whenever, in their opinion, the public good shall so require. Property owners purchase and hold subject to these powers, and they have no vested right to deny the widening, contracting or

otherwise improving any street." From the decisions in *City of Chicago* v. *Union Building Ass.* 102 Ill. 379, and *People ex rel.* v. *Village of Hyde Park*, 117 id. 462, there is a plain implication that a municipal corporation may vacate a part of a street, as distinguished from the vacation of an entire street. In *Meyer* v. *Village of Teutopolis*, 131 Ill. 552, an ordinance of the village vacating a certain portion of a street in that village was held valid. In *Smith* v. *Mc-Dowell*, 148 Ill. 51, the ordinance was not held invalid on the ground that only a portion of the street was vacated. It was a part of the particular case, that the ordinance assumed to vacate, not the whole but a portion, only, of the street there involved, but the gist of the decision was that the corporate authorities had no power to so vacate for the sole benefit and use of a private person. The vacation of an entire street, under like circumstances, would be alike *ultra vires.* The rule there laid down would be applicable to the case of the whole of a street as well as to that of a portion of it. We said: "The municipal corporation holding and controlling its streets in trust for the use of the general public, without power of converting them to any other use, it follows, necessarily, that the right to 'vacate the same' is to be exercised only when the municipal authorities, in the exercise of their discretion, determine the street is no longer required for the public use or convenience." No reason is perceived why a city council might not, under some circumstances and in the exercise of a sound official discretion, conclude that a portion of a street, either in length or in width, was not necessary for public use and convenience, and that public interests would be subserved by vacating the same, and thus freeing the municipality from the duty and burden of keeping it in good and safe condition and repair.

This case is wholly different from *Smith* v. *McDowell*, *supra.* It conclusively appears upon the face of the ordinance as well as from the other evidence in the record,

that the vacation of parts of the public streets was for entirely legitimate purposes, and in furtherance of what the city council, in the exercise of the discretion vested in them by the statute, deemed a wise and salutary public policy. The streets were all ninety-nine feet wide, and it was evidently concluded that so great a width of street was not required for public use and convenience, except in respect to Market street,—the business street of the city,—and so the ordinance was passed, and the cost of paving and maintaining a useless width of public highway lifted from the shoulders of the municipality and its tax-payers.

It is claimed that section 4 of the ordinance is void,— that the city authorities had no power to sell, donate or give away parts of the public streets that they held in trust. It is ordained in the ordinance "that a strip two feet wide next to the property, lands, lot or lots abutting on said streets shall be and is hereby vacated." It is admitted that the original plat of the city and streets was signed by the attorney in fact of the proprietors of the land, and that this makes it a common law dedication of the streets. (*Gosselin* v. *City of Chicago*, 103 Ill. 623; *Earll* v. *City of Chicago*, 136 id. 277; *Thomsen* v. *McCormick*, id. 135.) It therefore resulted, when the strips two feet wide were vacated by the city, that they became parts of the lots adjoining them, and the lot lines were extended two feet; and it also resulted that by operation of law the titles of the owners of the abutting lots to the portions of the strips located in front of their respective lots became absolute, and freed from the encumbrance of the easements that had been upon them. It follows that the concluding words of the section, to the effect that the strip taken from the streets was donated and given to the lot or lots, were but mere surplusage.

The ordinance of 1891 was and is valid, and when the city council, by the ordinance of July 25, 1892, made provision for the construction of a brick sidewalk six feet

in width on the north side of Sixth street, and that it should be made and constructed along the outside line of said street and adjoining the lot or lots abutting on said street, the line so fixed by the ordinance applied to and was coincident with the lot line and street line as fixed by the prior ordinance of 1891.

Shade trees in the public streets of a city are the property of the municipality, and it has complete control over them. (*Baker* v. *Town of Normal*, 81 Ill. 108.) There was nothing unlawful in the conduct of the city officials. The council had authority to order a brick sidewalk six feet wide to be built along the line of the street and adjoining the lot of appellees. It is to be presumed that there was a public necessity for its construction. At all events, that was a matter that the statute submitted to their discretion. The two large trees were in the line of the sidewalk ordered, and the larger part of their bodies was within the limits upon which the sidewalk was located by the ordinance. The sidewalk could not be constructed in conformity with the ordinance without cutting them down and removing them. If left standing they would be permanent obstructions. We do not think that the proposed action in the premises of the city officials can justly be regarded as wanton, or as so unreasonable and oppressive as to give a court of chancery jurisdiction to interfere. (*Brush* v. *City of Carbondale*, 78 Ill. 74.) In fact, it seems to us that it would be more unreasonable to destroy the symmetry and impair the convenience and safety of the sidewalk, by either leaving obstructions in it that are two feet in diameter, or by turning it out, on the south side of the trees, six or seven feet into the roadway of the street, or by contracting it, on the north side of the trees, to the width of four feet, than it would be to cut down the trees that do not belong to appellees but afford shade to their premises.

In our opinion both the decree of the circuit court and that decree as modified by the Appellate Court are erro-

neous, as is also the judgment of affirmance. The judgment and the decrees are reversed, and the cause is remanded to the circuit court, with directions to dissolve the injunction and dismiss the bill of complaint for want of equity, at the cost of the complainants therein.

*Reversed and remanded.*