## Village of Winnetka v. Chicago & Milwaukee Electric Ry. Co.

1.  EQUITY PLEADING—*Allegations of the Bill Must be Broad Enough to Sustain the Decree.*—A decree must not be broader than the allegations of the bill.

2.  SAME—*Court May Grant Necessary Relief Under the General Prayer of the Bill.*—Under the general prayer of a bill in equity, the court may grant such relief as may be required under its allegations.

3.  STREETS—*Exclusive Use Can Not be Granted for Private Purposes.* —The public is entitled to have the use of the streets for travel at all times and no exclusive use can be granted for private purposes and the public be deprived of the right of travel thereon, and adjacent property owners prevented from ingress and egress from their property situated thereon.

4.  SAME—*Street Railroad Not an Additional Servitude.*—The construction of a street railroad in a street, together with a trestle as a viaduct to cross an intersecting thoroughfare, is not an additional servitude.

Bill for an Injunction.—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding.    Heard in the Branch Appellate Court at the March term, 1902.    Affirmed.    Opinion filed February 27, 1903.

STACY W. OSGOOD and MILLARD F. RIGGLE, attorneys for appellant.

The object of a street is for the ordinary passage and travel which the public and individuals are rightfully entitled to have the use of at all times, and no exclusive use can be granted for private purposes and the public be deprived of the right of travel thereon. The streets of a city are public highways, that from side to side and from end to end are held for the use of the public, and the exclusive use of a public street can not be granted to any person or corporation for any purpose whatever. Gen. Elec. Ry. Co. v. C. & W. I. R. R. Co., 184 Ill. 588; Penn. Co. v. City of Chicago, 181 Ill. 296; C., B. & Q. R. R. Co. v. Street R. R. Co., 156 Ill. 265; Corcoran v. C., M. & N. R. R. Co., 149 Ill. 295; Ligare v. City of Chicago, 139 Ill. 46; Field v. Barling, 149 Ill. 556.

WOOD & OAKLEY, attorneys for appellee.

A municipal corporation may authorize, under the circumstances of this case, the erection of an elevated street railroad structure in the street, even though such structure impairs the complete and unobstructed use of the street "from side to side and end to end." Doane v. Lake Street El. R. R. Co., 165 Ill. 510 (517–518).

MR. JUSTICE BURKE delivered the opinion of the court.

This was a bill filed in August, 1899, by appellee, for a decree against appellant and others to correct the record of a certain ordinance of March 7, 1899, and for an injunction to restrain the village from in any manner interfering with the company in the use of its franchise or road as constructed in the village, and for such further relief in the premises as the nature of the case might require.

The electric railroad extends from Evanston to Waukegan. In passing through the village of Winnetka the railroad runs in a northerly and southerly direction and is built on a strip of less than twenty-five feet of ground on the easterly side of and adjoining the right of way of the C. & N. W. Railroad Company. The strip of ground for a por-

tion of the way is a part of Wilson street. Willow avenue
crosses Wilson street, and over Willow avenue the com-
pany built a viaduct and constructed the approaches
thereto for the road, with trestle-work extending the
required distance back to secure proper grade, and occupy-
ing a strip of ground less than twenty-three feet in width
and adjoining the right of way of the Chicago & North-
Western Railroad Company.

The real controversy in the case is, has the company
acquired a right to the entire strip which it occupies, or
has it right to occupy only twenty feet, as insisted upon by
the village.

May 24, 1898, the village passed an ordinance granting
to the Bluff City Electric Street Railway Company, of
which appellee is successor, right to construct and operate
street railway lines upon certain streets in Winnetka.
Section 3 thereof is "The tracks of said railway  *  *  *
on Wilson avenue shall be so located that the easterly rail of
the east track shall be as near as practicable to and not
more than twenty-five feet from the westerly line of said
avenue except at curves."

It is therein provided that the rails shall be so laid that
the top surface thereof shall be on a level with the surface
of the streets where laid. Section 4 provides that the
streets mentioned in the ordinance shall be paved, etc., by
the company, according to plans and specifications therefor
to be prepared by an engineer appointed by the council of
the village of Winnetka and that "the said work is to be
done under his supervision, all at the expense of the com-
pany." It was soon discovered that the ground near Wil-
low avenue was so much higher than in the avenue, that if
the rails were laid on the surface across Willow avenue the
track there would be dangerous. Accordingly, December
6, 1898, the company proposed in writing to construct a
viaduct over Willow avenue, if the "village would do what
was fair to accomplish this improvement."

December 19, 1898, the company sent another letter with
a sketch and profile, calling attention to the fact that a

part of the space under the trestle would be unfit for public use, and offering, notwithstanding the great cost of constructing the viaduct, to secure a strip of land from Maple to Willow streets of forty-two feet in width, and to dedicate the east twenty-two feet to the village for street purposes, and to secure sixty-six feet from the southern termination of Wilson street to the south line of Winnetka, and dedicate the east twenty-two feet thereof to the village for street purposes. It will be noticed that the proposition contained in this last letter, with the sketch and profile, left but twenty feet to be occupied by the trestle. January 10, 1899, the village replied that the last proposition would be acceptable if four feet additional to the width of the street were secured, the pier at Wilson avenue changed, and liability for damages caused property owners, assumed. January 11th, this proposition was declined, but on March 7, 1899, the company sent a letter to the village council wherein it stated that it was unable to procure a strip of forty-six feet through block sixty-four, and therefore it could not accept the said proposition of January 10th, but was willing to accept a proposition with the following conditions:

(1.) "In place of a grade crossing over Willow street as now proposed we agree to construct a substantial viaduct."

(2.) "We agree to construct and maintain a station on our line just north of Maple street as indicated on the plans we have submitted to you."

(3.) "We will purchase or condemn a strip of land sixty-six feet in width from the south termination of Wilson street to the south line of the village of Winnetka and dedicate the east thirty-two feet thereof to the village of Winnetka for street purposes."

"As we are now letting our contracts for the completion of our road to Evanston, it is necessary that this matter should be decided at once so that in case a viaduct is decided upon we can place the contracts for the steel structure at once so as to have it in readiness, and this will also necessitate the extension of time for the completion of our road to your village to July 1st.

"Another subject which demands immediate attention

is that your honorable body appoint an engineer to pre-
pare the specifications for the necessary street improve-
ments as is required by section 4 of the ordinances granted
to the Bluff City Street Electric Railway Company, as we
are obliged to let the contract for these improvements at
once in order to have the same completed within the time
specified in the ordinance."

On the same day this letter came before the village coun-
cil and the record of the village proceedings shows that the
following ordinance was passed :

" The Council of the Village of Winnetka Ordain :

" That the ordinance heretofore granted, on the 24th
day of May, A. D. 1898, to the Bluff City Street Electric
Railway Company, its successors and assigns, the right
and authority to construct a superstructure or trestle on
the west twenty feet of the right of way heretofore granted
between the west line of Maple street and the south line
of Willow street, and on Wilson avenue from the south
line of Willow street to such point as will make the grade
on said trestle work about one per cent.; said right and
authority are given upon the express condition that said
Bluff City Electric Street Railway Company, its successors
and assigns, shall cause to be dedicated to the village of
Winnetka, for street purposes, the east thirty-six (36) feet
of Wilson avenue extended to the south corporate limits of
said village.    This ordinance shall be in full force and
effect from and after its passage."

" Passed March 7, A. D. 1899."

From this record it appears that the company was given
the right to construct its trestle on the west twenty feet of
the right of way heretofore granted, between the west
line of Maple street and the south line of Willow avenue,
to such point as would make the grade on said trestle-work
about one per cent.    It is claimed by the company that the
draft of the ordinance which was read and acted upon by
the council, gave the road the right to construct its trestle-
work on the west twenty-five feet of its right of way and
that the village clerk incorrectly copied into the record
from the said original draft the words and figures " twenty
(20) feet," instead of the words and figures " twenty-five
(25) feet."

There is much conflicting evidence upon the point as to whether the original ordinance contained the words twenty or twenty-five feet.

A few days after its passage the village clerk, upon the request of the company, for its guidance, prepared and sent to the company what purported to be a certified copy of the ordinance in question and he therein wrote the words " twenty-five feet."

After reviewing the evidence at great length the master to whom this case was referred finds that the original pencil draft of the ordinance of March 7, 1899, was in terms a grant of the use to the company for the purpose of its trestle-work of the whole twenty-five feet of the original right of way under the ordinance of May 24, 1898; and the master further finds that " a majority of all the trustees present," did not, as is required by the law, concur in the passage of the ordinance of March 7, 1899, as it now appears in the record of ordinances, and that the same must therefore be considered null and void; but finds that the trestle-work must be regarded as constructed under the original grant of the right of way contained in the ordinance of May 24, 1898; that the same was constructed with the acquiescence of the authorities of the village and that the company is therefore entitled to a permanent injunction restraining the village from interfering therewith. The court denied the prayer of the bill so far as it is asked that the village be compelled to correct its record of said ordinance of March 7, 1899, but did make permanent the order of injunction restraining the village from interfering with the said superstructure of the company.

Counsel for appellant insists that the allegations of the bill are not sufficiently broad to sustain the decree. It will be conceded that the decree must not be broader than the allegations of the bill. Monarch Brewing Co. v. Wolford, 179 Ill. 252; North Chicago St. R. R. Co. v. Ackley, 171 Ill. 105; Ames v. Holmes, 190 Ill. 561; Lawrence v. Lawrence, 181 Ill. 248.

It is insisted that the sole purpose of the bill is to secure

a correction of the ordinance and the record thereof. A careful reading of the bill will show the entire situation and the merits of the controversy, which the evidence has only made clearer.   From the bill it appears that the seriousness of the situation and its tenseness were about to culminate in the use of physical force, and the company in its letter of notice to remove the trestle based its action upon what it claimed was in the ordinance of March 7th. The object of the bill was to enjoin any interference with, or removal by the village of the trestle-work; and as the right to have the same removed was said to be based upon the lack of authority upon the part of the company to occupy a strip of more than twenty feet of the street, the prayer of the bill was that the village be restrained from removing the company's trestle, and to secure the injunction was the object of the bill.   The reason set up in the bill why the prayer for injunction should be granted was that the company did have authority to occupy with its trestle-work said strip of twenty-five feet.   It is true that in granting the prayer for injunction the court did not in its decree direct that the record be corrected, but it did find, whatever may have been the facts as to the passage of the so-called ordinance of March 7, 1899, nevertheless, that such was the conduct of the village with reference to the construction of said trestle-work attempted to be provided for in said ordinance, that the village ought to be restrained from causing its removal, because of what had been done under said alleged ordinance by the company and acquiesced in by the village.

It is an elementary rule in equity pleading that under the general prayer of the bill the court may grant such relief as may be required under its allegations.   In the case at bar it does not follow that because the complainant may have erroneously conceived that his remedy was to have the court correct the record, therefore the court is powerless to grant relief, where the allegations of the bill show just what remedy is needed for the evil set up in the bill, especially as the pleader asks for the relief which shall seem to the court equitable.

It was found by the court that the trestle-work in question had been constructed to occupy more than twenty feet, in good faith, and in the full belief on the part of the company that the ordinance of March 7, 1898, gave it the right so to do; and it was further found that the village, through its president and engineer, had actual knowledge as early as April 28, 1899, that the company was using twenty-five feet for its right of way in erecting its said trestle-work, and though possessed of such knowledge the village made no protest against said alleged trespass until the trestle was completed and the track in readiness for operation. It is to be remembered that the ordinance provided that this work was to be done under the superintendence of the same engineer. The original draft of said ordinance, for many days in the legal custody of the village, mysteriously disappeared. Under the allegations of the bill the evidence was admissible, if for no other purpose, to show the contents of the lost ordinance, as understood and acted upon by the parties thereto. Bearing in mind the strict rules laid down by Mr. Story in his work on Equity Pleadings, we are of the opinion that the evidence was admissible and that the allegations stated a case in which the court was justified in granting the decree, provided the facts of the case and the law applicable thereto warrant such decree. In fact, counsel for the village say that "the company having chosen its court, we have met it in the forum of its own selection." There is a sharp conflict of evidence; much of it was oral testimony. The witnesses appeared before a master of long experience in his office. The record shows that exceptions were filed to his report thereon and heard at length by the court. Under these circumstances we shall not disturb the finding of the court as to the facts of the case.

The law is correctly stated by counsel when they say that there can never be an estoppel against a municipality where there is an absolute want of power on the part of the municipality to do the act or enter the contract. From this law it is argued that whether or not the village gave the company authority to construct the said trestle-work,

and regardless of the conduct or acquiescence of the village and the additional outlay of money by the company, still, that as the village had no legal power to grant this ordinance of March 7, 1899, the village is not estopped from insisting upon the removal of the trestle. It must be conceded that the public is entitled to have the use of the streets for travel at all times; no exclusive use can be granted for private purposes and the public be deprived of the right of travel thereon and adjacent property owners prevented from ingress and egress to and from their property situated thereon. General El. Ry. Co. v. C. & W. I. R. R. Co., 184 Ill. 588; Pennsylvania Co. v. City of Chicago, 181 Ill. 289; Smith v. McDowell, 148 Ill. 51; Snyder v. City of Mt. Pulaski, 176 Ill. 397.

The question remaining is, may a municipal corporation, in the exercise of a sound discretion, devote part of a highway to a specific public use when the safety and convenience of its citizens require it? The village has determined, by granting the company right to use a part of the street, that its use is public and for the public benefit. If the village believed that, owing to the steep grade, a viaduct over Willow avenue was desirable and for the safety of the public, it follows that the trestle was necessary, even though for a short distance it ran so near the ground that the public would be excluded therefrom. The trestle-work, however, does not exclusively occupy Wilson street, but leaves over forty feet to be used as a highway for public travel. The wisdom of the council in permitting the erection of this trestle-work is not questioned, but it is claimed that it should be twenty feet wide and not more.

Again, counsel for the village take the ground that its act in permitting the erection of any trestle was *ultra vires* and void, and rely to maintain their position upon certain Illinois cases; but these cases will all be found to be instances where the municipality attempted to give away streets for strictly private purposes.

In Smith v. McDowell, *supra*, it was held that the municipal authorities have no power by ordinance to vacate a

strip of land along and in a public street, for the sole pur-
pose of enabling a private person to occupy such strip of
the street with a permanent structure, appurtenant to his
building abutting upon the street.

In Pennsylvania Co. v. City of Chicago, *supra*, an ordi-
nance devoting certain parts of the streets to the exclusive
use of drivers of vehicles was held to be null and void.

In Snyder v. City of Mt. Pulaski, it was held that the
city has no authority to grant the privilege of constructing
and maintaining in the public street a well for strictly
private purposes.

The case of Ligare v. City of Chicago, 139 Ill. 46, may
throw some light by analogy upon the questions before us.
In that case the city attempted to turn over Archer ave-
nue to be occupied by seven steam railroad tracks, and, as
the court there held, the street would be devoted exclusively
to the use of railroad companies. It seems that the claim
was made that there would be room enough for a joint
user by the public and the roads; but the court, in its opin-
ion, further states that no rational being would, at the
risk of the inevitable dangers from passing engines and
cars, use the street at the point in question as a common
highway, unless under stress of most extraordinary cir-
cumstances. It is not material that the public are not by
the words of the ordinance forbidden the use of this part
of the street; the effect of the grant is inevitably an exclu-
sion of all but these railroads from its use, and the law
deals with results and not with mere forms in such matters.

In most of the cases referred to, it will be found that
steam roads and not street cars for passengers were in-
volved. Counsel for applicant admit that elevated railways
with their pillars do not occupy the street so as to exclude
the general public; but say that in the case at bar the street
railroad company, where its trestle is erected, has the exclu-
sive use of a portion of the streets. However, where there
is abundance of room left on the street for public travel,
and, as in this case, a trestle is erected for a viaduct, is
there an exclusive use of the street as the term is used in

the cases above cited? The viaduct enables the public to pass along Willow avenue in perfect safety and without interruption by the passing of trains on the company's tracks, and this advantage is gained at or near the very point on Willow avenue where the structure is placed. Is not the difference between the occupation of a public street by the pillars and supports and stairways of an elevated railroad and the trestle-work in question one simply of degree?

In Doane v. Lake St. El. R. R. Co., 165 Ill. 510, it is said: " While the streets are held in trust for the public use and can only be appropriated to the purposes for which they were dedicated, it is a settled law of this state that permitting street railways to be placed therein is not subjecting them to an unlawful use; the elevated road in question * * * will certainly obstruct travel on the street by other means less, and be less hazardous to the public, than would a surface road. Pillars upon which the structure is to be built, which it is claimed will exclude the public from a part of the street, are a necessary part of the road, as much as are rails and other parts of tracks constructed upon the ground, or as are trolley posts placed in the street for operating an electric road. It is true that all these things do, to some extent, interfere with the use of the street by ordinary vehicles, but the inconvenience is one which must be borne for the benefit resulting to the public from the better modes of travel thus afforded."

We understand that this decision is not based alone upon the statute. The court does say that the right is clearly recognized by the statute, but however, in substance holds that the use of a street which facilitates travel and renders more convenient and safe the traveling public, does not constitute a new servitude of the street.

The village council of Winnetka were charged with the duty of so managing Willow avenue and Wilson street as to conserve the interests of the public. In their judgment it was for the convenience and safety of the public that a viaduct be constructed over Willow avenue and for this purpose a trestle-work was absolutely necessary. It is immaterial whether the public authorities of the village succeeded in expressing their will with reference thereto in a

written ordinance, properly passed, or whether by their conduct or acquiescence they did so.

It appears from the evidence that without the protest of the village, but with its acquiescence and in a sense its cooperation, the company was induced to build the viaduct and the approaches thereto in question. We are of the opinion that it was entirely within the power of the village to provide for the construction of the viaduct and trestle aforesaid, and the decree of the Superior Court must be affirmed.